Date signed March 12, 2008



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| Kingsville Motors, Inc. | * | Case No.     04-33755-DK |
| | * | Chapter       7 |
| | * | |
| Debtor. | * | |
| ************************************* | * | |
| Monique Almy, Chapter 7 Trustee | * | |
| | * | |
| | * | |
| Movant, | * | |
| vs. | * | |
| | * | |
| Timothy S. Brown, | * | |
| | * | |
| Claimant/Respondent. | * | |
| ************************************* | * | |
| Monique Almy, Chapter 7 Trustee | * | |
| | * | |
| | * | |
| Movant, | * | |
| vs. | * | |
| | * | |
| Martin Schuch, | * | |
| | * | |
| Claimant/Respondent. | * | |

## MEMORANDUM OF DECISION

This bankruptcy case was commenced by the filing of an involuntary bankruptcy petition under Chapter 7 on October 19, 2004 by creditors against an automotive dealership, Kingsville Motors, Inc. ("Kingsville").  On July 14, 2005, the court entered an order granting relief under Chapter 7.

Timothy S. Brown ("Brown") filed a proof of claim in Kingsville's case on June 13, 2006 in the amount of $168,902.67 categorized as an unsecured nonpriority claim ("Brown's Claim").  A similarly situated creditor,  Martin Schuch ("Schuch") filed an amended proof of claim on June 29, 2006 in the amount of $178,555.68 also categorized as an unsecured nonpriority claim ("Schuch's Claim").  Both proof of claims are based upon allegations of unjust enrichment, indemnification, and unpaid compensation.  The Chapter 7 Trustee, Monique D. Almy ("Trustee"), filed timely separate and individual objections to Brown's Claim and Schuch's Claim ("Trustee's Objections").

In the Trustee's Objections, the Trustee conceded that the portion of the claims comprised of money owed to Brown and Schuch ("Creditors") for compensation and employee benefits should be allowed.  However, the Trustee argued that payments made by Creditors to Harford Bank, and the investment money allegedly misused and lent to Kingsville should be disallowed.  Creditors filed separate and individual responses to the Trustee's objections and indicated that the Trustee agreed to withdraw the portion of the objection regarding indemnification of the Harford Bank loan.  A hearing on the remaining portions of Brown's Claim and Schuch's Claim ("Creditors' Claims") was held on October 17, 2006.  At the conclusion of that evidentiary hearing, the Court requested post-hearing supplemental memoranda.

After considering the evidence presented at the hearing and receiving the post-hearing supplemental memoranda, the court determines that the Trustee's Objections are denied.

# I. BACKGROUND

The following facts are undisputed.  In October 2002, Schuch was approached by John Felder ("Felder"), President of Kingsville, to become an investor.[1]  Felder proposed the creation of a limited liability company that would purchase parcels of real property from Kingsville for the purpose of leasing it back to the Kingsville.[2]  Felder requested that Schuch invest $400,000 to purchase the parcels.[3]  In addition, Felder asked Schuch to work for the Debtor as a general manager of the sales and finance departments.[4]

On October 31, 2002, Felder signed Articles of Organization ("Articles") creating DeJa-Vu, LLC, ("LLC") but the Articles were not filed with the State of Maryland's Department of Assessment and Taxation until November 13, 2002.[5]  Schuch never saw the Articles.[6]  The Articles stated: "The operating purposes of the company are to acquire, develop and lease real property for an automobile dealership."[7]  Unbeknownst to Creditors, Felder and his spouse, Judith Felder, formed another entity known as Deja-Vu Marketing, Inc., ("Marketing") of which the Felders were sole

---

[1] Schuch testified that he worked in the automobile sales business for approximately thirty years.  Schuch was employed at Tate Dodge in October 2002, and Felder was the district manager of DaimlerChrysler Corporation.  Schuch and Felder knew each other well because of their business relationship.  Tr. of hearing held 10/17/06 (hereafter "Trial Tr."), at 22-23.

[2] Schuch testified that Felder intended the prospective investors to purchase four parcels of real property.  Kingsville's automobile dealership building rested upon one parcel of real property, and the other three were adjacent to the dealership parcel.  Trial Tr., at 23.

[3] Trial Tr., at 23.

[4] Trial Tr., at 24.

[5] Claimants' Exh. 1, hearing held 10/17/06.

[6] Trial Tr., at 40.

[7] Claimants' Exh. 1, at 2, hearing held 10/17/06.

shareholders and directors.[8]

Schuch testified that he did not have $400,000 in liquid funds to invest, and solicited Brown, a personal friend and colleague, to partner with him in Felder's proposed investment.[9]  Creditors researched the assessed value of all four parcels of real property ("Kingsville Property") and discovered that it had a collective assessed value of $700,000, providing both investors immediate equity if they chose to invest.[10]  Accordingly, Creditors decided to each invest $200,000 to purchase the Kingsville Property.[11]

An Informal Organizational Action Of The Members Of DeJa-Vu, LLC was signed on November 19, 2002 by Felder, Schuch, Brown, along with Judith Felder and Willie George, without counsel.[12]  The document provides that John Felder was the President, and Judith Felder was the Vice President and Treasurer.[13]  The Felders had the majority voting interest as well.[14]

On November 19, 2002, Brown signed a check to the order of "Deja-Vu Marketing" in the amount of $140,000.[15]  On November  25, 2002, Schuch signed a check to the order of "Deja Vu

---

[8] Creditors' Counsel provided this averment in the supplement to Creditors' proof of claims.  *See* Brown's Proof of Claim, filed June 13, 2006; Schuch's Proof of Claim, filed June 29, 2006.

[9] Trial Tr., at 25.

[10] Trial Tr., at 32.

[11] Although the Creditors agreed to invest $400,000, the total amount invested by Creditors was $300,000.  Trial Tr., at 27-28; Claimants' Exh. 3, hearing held 10/17/06.

[12] Timothy Brown's Proof of Claim, Exh. A; Trial Tr., at 40.

[13] Timothy Brown's Proof of Claim, Exh. A.

[14] *Id.*

[15] Claimants' Exh. 3, hearing held 10/17/06; *See also* Trial Tr., at 29, 40.

Marketing Inc" in the amount of $60,000.[16]  Although the checks were not written to the exact name

listed in the Informal Organizational Action Of The Members Of DeJa-Vu, LLC, Creditors testified

that their intent was to write the checks out to the order of the limited liability company that would

purchase the Kingsville Property from Kingsville.[17]  Both checks were endorsed by Felder and were

deposited into the same Bank of America account ("Marketing's Account").[18]

On January 2, 2003, Schuch, Brown, Felder, along with Judith Felder and Willie George

executed the Operating Agreement for DeJa-Vu, LLC., without counsel.[19]  Exhibit A of the

Operating Agreement indicates that Felder and Schuch invested $200,000 each, John and Judith

Felder invested $2,500 each, and Willie George invested $50,000.[20]

On March 26, 2003, Creditors signed another set of personal checks each in the amount of

$50,000.[21]  Brown's check was payable to the order of "DeJa-Vu Corporation".[22]  Schuch's check

was payable to the order of "Deja Vu Marketing."[23]  On the back of both checks is a stamp that

---

[16]  Schuch testified that he asked Brown to loan him $40,000 so that Schuch could invest a total of $100,000.  Trial Tr., at 28.  A couple of weeks later, Schuch repaid Brown the $40,000.  Trial Tr., at 29; Claimants' Exh. 3, hearing held 10/17/06.

[17]  Trial Tr., at 33-34, 47, 49-50.

[18]  The back of Brown's check contains Felder's signature on the endorsement line.  Below the signature, an account number, 003928951186, was written. The Bank of America indorsement stamp containing the same account number is also on the back of the check.  Creditors' individual Schedule K-1 Forms indicates that each contributed $100,000 in 2002 to DeJa-Vu, LLC, and that each lost $4,757 of the initial investment.  Claimants' Exh. 5, hearing held 10/17/06.

[19]  Trial Tr., at 40; Claimants' Exh. 2, hearing held 10/17/06.

[20]  Claimants' Exh. 3, at 16, hearing held 10/17/06.

[21]  Id.

[22]  Id.

[23]  Id.

states "PAY TO THE ORDER OF BANK OF AMERICA....FOR DEPOSIT ONLY DEJA VU

MARKETING INC."[24]  These checks were deposited into Marketing's Account,[25] the same bank

account into which the November checks had been deposited.[26]

Unbeknownst to Creditors, Felder executed two promissory notes documenting loans to

Kingsville for a total of $368,000 on May 27, 2003.[27]  The first promissory note for $268,000 was

effective as of February 2, 2003, and the second promissory note for $100,000 was effective as of

April 4, 2003.[28]  Both promissory notes indicate that the lender is Marketing or Felder, and the

borrower is Kingsville.[29]  Felder is the only individual who executed and signed these promissory

notes.[30]  Marketing's transaction history indicates that on February 3, 2003 a $238,000 withdrawal

was made on the account,[31] and that on April 4, 2003 a $100,000 check was written from the

account.[32]  Creditors admitted a chart which lists a series of checks written from Marketing's

---

[24] *Id.*

[25] *Id.*

[26]  During closing arguments at the October 17, 2006 hearing, Creditors' counsel argued that Schuch and Brown were unaware that the money invested into DeJa Vu LLC was being diverted into DeJa Vu Marketing.  Tr. of hearing held Oct. 17, 2006, at 52.  The Trustee never contested this allegation, nor did the Trustee introduce evidence to the contrary. *Trustee's Supplemental Memorandum In Support Of Objections To Claims Of Brown And Schuch,* filed November 6, 2006.

[27] Claimants' Exh. 6 and 7, hearing held 10/17/06.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] Claimants' Exh. 8, at 17, hearing held 10/17/06.

[32] Claimants' Exh. 8, at 20, hearing held 10/17/06.

Account that the Trustee stipulated were written to or for the benefit of Kingsville.[33]

Creditors learned of the promissory notes around October 30, 2003, and that Felder had transferred the investment funds from Deja-Vu Marketing to Kingsville instead of purchasing Kingsville Property as planned.[34]  Upon finding the promissory notes, Creditors became concerned and employed an attorney, Malik Tuma, to send a letter requesting an accounting from Felder of Creditors' investment.[35]  Upon receiving the letter, Felder fired Schuch from Kingsville's employment and Brown quit working at Kingsville approximately a month and a half later in December 2003.[36]  Brown testified that at some point later, he questioned Felder on the whereabouts of the investment funds, but never received a response.[37]

## II. STANDARD

"The burden of proof with respect to claims filed under 11 U.S.C. § 502 rests initially, and ultimately, with the claimant who 'must allege facts sufficient to support their claim.'" *In re Gates,* 214 B.R. 467, 472 (Bankr.D.Md. 1997)(quoting *In re Weidel,* 208 B.R. 848, 854 (Bankr.M.D.N.C. 1997)).  Under Federal Rule of Bankruptcy Procedure 3001(f), a properly executed proof of claim is *prima facie* evidence of the claim's validity.  *Gates,* 214 B.R. at 472.  A *prima facie* case is rebuttable once an objecting party demonstrates by un-contravened evidence a defense to one or

---

[33] Trial Tr., at 39; Claimants' Exh. 3, 8, 9, and 10, hearing held 10/17/06.

[34] Trial Tr., at 35-37.

[35] According to Creditors' testimony Felder completed loan applications, which Schuch and Brown signed, applying for loans to consummate the sale of the Property.  Felder informed Schuch and Brown that Forest Hill Bank approved the loan application, but settlement never occurred.  Trial Tr., at 38, 48-49.

[36] Schuch began working for Kingsville in November 2002.  Tr. of hearing held Oct. 17, 2006, at 35 and 48.  Brown began working for Kingsville in March 2003.  Trial Tr., at 48.

[37] Trial Tr., at 48-50.

more elements of the cause of action asserted in the proof of claim that would be sufficient to defeat the legal basis for the claim. *Id.* (quoting *Weidel*, 208 B.R. at 854). The burden of proof then shifts back to the claimant to produce evidence establishing the validity of the claim by a preponderance of the evidence. *In re Harford Sands Inc.,* 372 F.3d 637 (4th Cir. 2004); *In re Computer Learning Centers, Inc.*, 298 B.R. 569 (Bankr.E.D.Va. 2003); *Gates,* 214 B.R. at 472; *Weidel,* 208 B.R. at 854.[38]

Here, the Creditors' Claims were properly filed in accordance with Rule 3001(f) and constituted *prima facie* evidence of the validity and amount of the claim. The Creditors' Claims of unjust enrichment are founded upon the allegations that Creditors' investments were transferred to Kingsville for an unintended purpose. Creditors assert a right to repayment, constituting a claim in the bankruptcy case of Kingsville, averring that it is unjust for Kingsville to retain the money.

The Trustee's Objections assert that Creditors failed to prove that the funds were improperly loaned to Kingsville, or that the loans to Kingsville were *ultra vires* acts by Felder. Instead the Trustee avers that Felder had the "general authority" to loan the investment funds to Kingsville. Moreover, the Trustee contends that the Creditors' Claims should be disallowed because they seek to recover investments made to LLC and not directly to Kingsville.

At the October 17, 2006 hearing, the Trustee expanded her objection by arguing that the evidence presented by Creditors neglects to trace the Creditors' $300,000 investment deposited in Marketing's Account and later transferred to Kingsville. The Trustee also contended that Creditors should not prevail because they were negligent in protecting their investments and empowered the

---

[38] If under controlling law, the burden of proof is upon the objecting party, as may occur where the claim is for an assessed federal tax, the burden of proof will remain upon the objecting party. *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 20-21, 120 S.Ct. 1951, 1955 (2000).

LLC, via John Felder, to incur liabilities as provided under Section 4A-203 of the Corporations and Associations article of the Annotated Code of Maryland.  The Trustee emphasized this point by asserting that the Creditors agreed to create a limited liability company without consulting counsel, wrote checks to the order of "Deja Vu Marketing" without verifying the actual name of the business entity, and invested money without requiring escrow of their funds.

The Trustee's contention on tracing is not an issue because all parties filed a post-hearing document stipulating that the "lowest intermediate balance" tracing method is appropriate.[39]  Under this tracing method, the parties also stipulated that $295,569.21 of the Creditors' investment funds deposited in Marketing's Account were transferred to or for the benefit of Kingsville.[40]

The court finds that the objections raised and evidence presented placed into dispute material facts.  Accordingly, the Creditors bear the burden of proving by a preponderance of the evidence that Kingsville is liable to the Creditors as asserted by the proofs of claims.

### III. ISSUES

The issue presented in this case is whether Creditors have sustained their burden of proving entitlement to collect from the Estate under an unjust enrichment cause of action.  The court must examine the elements of an unjust enrichment claim and, *inter alia,* determine whether privity (which is not present in this case) is a necessary element of such a claim.  And if privity is unnecessary, whether the Creditors have proven by a preponderance of the evidence that it is inequitable for Kingsville to retain the money transferred when Felder, who may or may not have had authority, loaned and transferred their investments to or for the benefit of Kingsville.

---

[39] Stipulation Between Trustee And Claimants Regarding Trustee's Objection To Claims Of Martin Schuch And Timothy Brown, filed October 31, 2006, at 1.

[40] *Id.*

## IV. ANALYSIS

Maryland courts have recognized three required elements of unjust enrichment:

(1) a benefit conferred upon the defendant by the plaintiff;
(2) an appreciation or knowledge by the defendant of the benefit; and
(3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, LLC.*, 936 A.2d 343, 351 (Md. 2007). *See also Benson v. State,* 887 A.2d 525, 546 (Md. 2005); *Mona v. Mona Elec. Group, Inc.*, 934 A.2d 450, 473 (Md. App. 2007); *Unlimited, Inc. v. New Baltimore City Bd of School Com'rs*, 843 A.2d 252, 299-300 (Md.App. 2004). The general rule is that no quasi-contractual claim arises when a contract exists between the parties. *Mass Transit Admin. v. Granite Const. Co.*, 471 A.2d 1121, 1126 (Md.App. 1984).

The reasoning behind allowing claims for unjust enrichment have been discussed in detail by the Maryland courts. "A person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other owes restitution to him in the manner and amount necessary to prevent unjust enrichment." *Berry & Gould, P.A. v. Berry,* 757 A.2d 108, 113 (Md. 2000) (quoting Restatement (Second) of Restitution Section §1 (Tentative Draft No. 1, 1983)). The Maryland Court of Special Appeals earlier had opined: "The restitution claim . . . is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." *Mass Transit,* 471 A.2d at 1126.

### A. First Element

The first element of an unjust enrichment claim is whether the plaintiff conferred a cognizable benefit upon the defendant. *Hill,* 936 A.2d at 354. Under the *Restatement of Restitution Section 1* cmt a (1937, updated through 2006), "a person confers a benefit upon another if he gives to the

other person of or some interest in money[.]" *Bank of America Corp. v. Gibbons,* 918 A.2d 565, 569 (Md.App. 2007); *Plitt v. Greenberg,* 219 A.2d 237, 241 (Md. 1966)(citing *State, to Use of Employment Sec. Bd. v. Rucker,* 126 A.2d 846, 849 (Md. 1956)).

The Trustee argues that Creditors' unjust enrichment claim fails because the Creditors did not have direct dealings with Kingsville. Here, the loan was made through a third party entity, Marketing and Felder.

The Trustee bases her argument on the holding in *Metalmeccanica Del Tiberina v. Kelleher,* 2005 WL 2901894 (4th Cir. 2005), an unpublished Fourth Circuit Court of Appeals' decision that applied South Carolina substantive law. In that case, the reviewing court examined the trial court's denial of Metalmeccanica's motion to amend judgment after the jury returned its verdict. *Id.* at *1. The plaintiff, Metalmeccanica, entered into negotiations with the defendant to purchase four mechanical presses from the defendant's corporation. *Id.* The agreement directed the plaintiff to pay a deposit for the presses to a limited liability company also owned by the defendant. *Id.* The defendant later transferred the deposit from his limited liability company to his personal bank account. *Id.* At trial, the jury returned a verdict against the plaintiff on the unjust enrichment claim, and the plaintiff moved to amend judgment. *Id.* The Fourth Circuit concluded that in fact the plaintiff failed to demonstrate that it conferred a nongratuitous benefit directly to the defendant. *Id.* However, the opinion does not elaborate on the legal standard applied for privity and its ruling simply finds that there was no abuse of discretion by the trial court in denying the motion to amend judgment.

In turn, the Creditors charge that the holding in *Plitt* is the applicable standard the court must apply in this case. In *Plitt,* the plaintiff transferred money through an intermediary to the defendant. *Plitt,* 219 A.2d at 239-240. The plaintiff testified that he was informed that he was making a loan to

the defendant and the intermediary, the plaintiff's attorney. *Id.* As security for the loan, the plaintiff received notes from the intermediary. *Id.* at 240. Some of these notes were forgeries, and the intermediary eventually filed for bankruptcy and was disbarred for various illegal financial transactions. *Id.* The plaintiff, unable to obtain repayment from the intermediary, filed a complaint against the defendant. *Id..* The undisputed evidence showed that the defendant had no knowledge that money deposited into his account derived from the plaintiff, and there was no evidence that an express contract for debt existed between the plaintiff and the defendant. *Id.*

The court in *Plitt* held that, "'[i]t is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner.'" *Id.* at 241 (quoting *Empire Oil Co. v. Lynch*, 126 S.E.2d 478, 479 (Ga. App. 1963)). Additionally, the court stated that a "plaintiff could recover money from even an innocent transferee who was without knowledge that he possessed the plaintiff's money." *Id* (citing *In re Brereton's Estate*, 130 A.2d 453 (Pa. 1957)).

The court disagrees that *Metalmeccanica* is applicable to the Creditors' Claims filed, and does not find that direct dealings between parties is a necessary element under a claim of unjust enrichment. *Metalmeccannica* ruled on the amount of evidence the trial court had in deciding to uphold a jury verdict, and not at the issue at hand in this case. *Metalmeccanica*, at *4. Plus, *Metalmeccanica* applies South Carolina substantive law.

The Bankruptcy Court for the District of Maryland must apply the substantive law of the applicable state when no "federal interest requires a different result." *Butner v. U.S.,* 440 U.S. 48, 55 (1979). As referenced above the Maryland courts have determined that the manner in which the money came to the defendant is immaterial if "in equity and good conscience" the defendant should

-12-

not hold it against the plaintiff and that "[a] plaintiff could recover money from even an innocent transferee who was without knowledge that he possessed the plaintiff's money." *Plitt*, 219 A.2d at 241.[41] Further, the court has held that the defendant does not have to recognize the benefit as having been obtained in such a manner at the time it is conferred. *Hill*, 936 A.2d 354.

The monetary transfer by the Creditors' in this instant case is a benefit of the type described in the Restatement and *Hill*. Here, the Creditors investments into the LLC were transferred by Felder to Kingsville in the name of himself and Marketing. The Trustee and Creditors stipulate that $295,569.21 was traced as being indirectly transferred from Creditors to Kingsville. Thus, the first element of unjust enrichment has been established.

### B. Second Element

The *Restatement (First) of Restitution § 123,* as cited and applied in *Plitt* and *Hill*, explains that the knowledge necessary to establish the second element of an unjust enrichment claim is not necessarily knowledge that the funds were obtained by wrongful conduct. "The essence of the requirement that the defendant have knowledge or appreciation of the benefit is that the defendant have an opportunity to decline the benefit." *Hill*, 936 A.2d at 354.

As President of Kingsville, Felder had knowledge of the funds that Marketing (by Felder) was transferring to Kingsville. Obviously Kingsville by its authorized officer could have declined the transactions.

---

[41] The Court of Appeals may have restricted third party unjust enrichment claims in the context of subcontractor claims where the "third party is not unjustly enriched when it receives a benefit from a contract between two other parties where the party benefitted has not requested the benefit or misled the other parties." *Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland*, 674 A.2d 534, 540 (Md. 1996) (citing *D.A. Hill Co. v. CleveTrust Realty Investors*, 573 A.2d 1005, 1010 (Pa. 1990)). However the Court of Appeals does not appear to have departed generally from the holding in *Plitt, supra.*

### C. Third Element

The third element of unjust enrichment is a fact-specific balancing of the equities to determine whether the enrichment is inequitable. *Id.* at 355. The Trustee argues that the Creditors empowered Felder through the LLC to enter into loan agreements that would further the purpose of the LLC. The Trustee contends that Creditors authorized Felder, through the LLC's Articles, and operating agreement, the authority to incur liabilities for the LLC.

In support of this argument, the Trustee cites to Section 4A-203 of the Corporations and Associations Article of the Maryland Code which provides,

> Unless otherwise provided by law or its articles of organization, a limited liability company has the general power, whether or not set forth in its articles of organization, to:
> . . .
> (4) Make contract and guarantees, incur liabilities, and borrow money;
> (5) Sell, lease, exchange, transfer, convey, mortgage, pledge, and otherwise dispose of any of its assets;
> (6) Acquire by purchase or in any manner, take, receive, own, hold, improve, and otherwise deal with any interest in real or personal property, wherever located;
> . . .
> (8) Purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, loan, pledge, or otherwise dispose of and otherwise use and deal in and with stock or other interest in and obligations of other corporations, associations, general or limited partnerships, limited liability companies, foreign limited liability companies, business trusts and individuals;
> (9) Invest its surplus funds, lend money in any manner which may be appropriate to enable it to carry on the operations or fulfill the purposes set forth in its articles or organization, and take and hold real property and personal property as security for the payment of funds so loaned or invested;
> . . .; and
> (17) Do every other act not inconsistent with law which is appropriate to promote and attain the purposes set forth in its articles of organization.

> MD. CODE ANN., CORPS. & ASS'NS. § 4A-203 (1999).

The Trustee also argues that Section 2.3 of the LLC's operating agreement grants Felder, as managing officer, the power "to do any and all things necessary, convenient, or incidental" to the

stated purpose of the LLC.[42]   The Trustee alleges that the purpose of the loan was to bolster the Debtor's financial position so that the investment in the real estate was of value.[43]   According to the Trustee, the purpose of the loan qualifies as necessary, convenient, or incidental.

Creditors hold the burden to prove that the equities weigh against the Debtor retaining the money, or in other words that it is "unconscionable" for Kingsville to hold the investment funds. While it is true that Felder in his capacity of President of the LLC may have been authorized to "[i]nvest its surplus funds, lend money in any manner that may be appropriate to carry on the operations or fulfill the purposes set forth in its articles. . ."[44], such authority perhaps granted by Plaintiffs through execution of the Informal Organizational Action of the Members of Deja-Vu LLC, did not confer unfettered power to transfer LLC's assets.  The stated purpose communicated to Creditors of invested funds into the LLC was to acquire real property, not to provide operating funds to Kingsville.

The Trustee's argument that the loan to Kingsville would improve the value of the contemplated real estate acquisition is unsupported by the evidence.  Instead, the bankruptcy record of Kingsville provides that on or about May 28, 2004, Kingsville, through its directors William and Lucia Bell, entered into a contract with another person.  The sale was for substantially all of the Kingsville's assets, which included the Kingsville Property that the Creditors intended to acquire.[45]

There is no dispute that the Creditors lacked knowledge that their investments were used for

---

[42] Trustee's Supplemental Memorandum In Support Of Objections To Claims Of Brown And Schuch, at 2.

[43] *Id.*

[44] MD. CODE ANN., CORPS. & ASS'NS. § 4A-203(9)(1999).

[45] This bankruptcy court found in adversary proceeding 06-1153, filed by the Trustee that Kingsville fraudulently conveyed the land because Kingsville was insolvent and for less than fair consideration.  The decision was later affirmed on appeal by the District Court of Maryland.

the benefit of Kingsville.  The Trustee stipulates that the creditors intended to invest in the LLC for the sole purpose of purchasing land.  In the months prior to learning of the promissory notes, Felder evaded questions from the Creditors regarding the status of their investment plans.  The testimony and evidence demonstrates that there was no preparation by Kingsville to enter into a land sale contract with the LLC, but instead Kingsville accepted the funds into its operating accounts.

Nor does the court find persuasive the Trustee's negligence argument against the Creditors. In hindsight, Creditors should have consulted legal counsel regarding this investment, but Maryland law does not require an attorney to be consulted.  Creditors placed their trust in Schuch's long time colleague Felder, who misused that trust.

It is true that the mere fact that a person benefits another is not of itself sufficient to require the other to make restitution.  Restatement, Restitution § 1 comment c. (1937).  For example, "[a] person who officiously confers a benefit upon another is not entitled to restitution therefor." Restatement, Restitution § 2.  Similarly except under some circumstances, "[a] person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution...." Restatement, § 112.  It is therefore clear that while "a person is enriched if he has received a benefit, the law does not consider him unjustly enriched unless "the circumstances of the receipt of the benefit are such as between the two that to retain it would be unjust." *First National Bank v. Shpritz*, 493 A.2d 410 (Md. 1985); *Alternatives Unlimited Inc. v. New Baltimore*, 843 A.2d 252, 302 (Md. App. 2004); *See also Hamilton v. Board of Education*, 195 A.2d 710 (Md. 1963).

The Court finds from the facts in this case that it would be unjust for Kingsville to retain the funds without obligation to Creditors.  There is no evidence that would support a finding of officious or gratuitous conduct by Creditors.

Finally, it would be inequitable for Kingsville to keep the funds because the Creditors and the

LLC cannot bring a contract claim as a basis for recovery.  According to *Brubaker v. Berks County,* 112 A.2d 620 (P. 1955), a case cited in *Plitt,* when property is fraudulently diverted from its proper use and in the absence of a legal *quid pro quo* the recipient has the obligation to restore to its rightful owner the property that was wrongfully appropriated." *Brubaker*, 112 A.2d at 622.  Here, no contract was formed between Kingsville and the Creditors or the LLC for the loan.  The Trustee overlooks the stipulated fact that Felder did not execute a promissory note in the name of the LLC. For unknown reasons, the promissory notes state that the lender is Marketing and Felder, and the borrower is Kingsville.[46]  As the record stands, neither the Creditors nor the LLC have a written agreement binding Marketing or the Debtor to repay the LLC.  Thus, Creditors cannot recover under contractual remedies.  *National Fire Insurance Company of Hartford v. Tongue, Brooks & Co., Inc.*, 486 A.2d 212, 216 (Md.App. 1985).

The bankruptcy estate of Kingsville also does not have an obligation to pay Marketing for the loan.  Kingsville's Schedules,[47] filed in this bankruptcy case, do not list Marketing or Felder as creditors.  John Felder did file a proof of claim for the same amount of money listed in the Creditors' Claims.[48]  The Trustee filed an objection to Felder's proof of claim, which the court sustained because Felder did not present one scintilla of evidence and failed to carry his burden of proof .[49]

For these reasons, the Trustee's Objections are denied.  An Order in conformity with this Memorandum of Decision will be entered accordingly.

---

[46]  Felder also signed the promissory note as Dealer Principal and Acting President for Kingsville.  Creditors' Exh. 6 and 7, hearing held 10/17/06.

[47]  *Schedule D*, filed September 7, 2005; *Schedule E*, filed September 7, 2005.

[48]  *John Felder's Proof of Claim*, filed May 16, 2006

[49]  Trial Tr., at 81; *Order Sustaining Trustee's Objection To Claim*, entered October 20, 2006.

cc:    Curtis C. Coon, Esq.
        Monique D. Almy, Esq.
        Joel S. Aronson, Esq.
        James C. Olson, Esq.
        U.S. Trustee

**End of Order**